IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CHARLES MIMS JR., | ) | |
| | ) | |
| Plaintiff, | ) | 8:04CV511 |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED PARCEL SERVICE, a Corporation, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion for summary judgment. Filing No. 44. Plaintiff filed a lawsuit alleging discrimination on the basis of race in violation of Title VII (Title VII) of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. The plaintiff's second claim for relief alleges discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112. Plaintiff also alleges breach of contract and unlawful discharge. The court has carefully reviewed the record, briefs, and relevant case law and finds the motion for summary judgment should be granted.

**SUMMARY JUDGMENT STANDARD**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

157 (1970). Therefore, if defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once a defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light most favorable to the nonmoving party, but "in order to defeat a motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

Summary judgment should seldom be granted in discrimination cases. *Heaser v. Toro Co.*, 247 F.3d 826, 830 (8th Cir. 2001). In passing on a motion for summary judgment, it is not the court's role to decide the merits. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (on motion of summary judgment, district court should not weigh evidence or attempt to determine truth of matter). The court must simply determine whether there exists a genuine dispute of material fact. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

**BACKGROUND**

Plaintiff, an African American male, worked for defendant from 1987 until his termination in 2002. Plaintiff's responsibilities over the years included loading and unloading trucks, sorting packages, repairing damaged packages, and briefly working as a driver. He worked as a combo employee, on the first shift as an operations clerk and on the second shift as a button sorter. He had different supervisors on each shift. He filed numerous grievances alleging harassment, and specifically in the last 63 days of his employment, he filed 28 grievances.[1] He often accused supervisors and managers of harassing and retaliating against him, ostensibly because he was African American. Following his termination, he filed a discrimination charge with the Nebraska Equal Employment Opportunity Commission (NEOC) and the Equal Employment Opportunity Commission (EEOC) alleging his termination was based on race and disability. He also alleged retaliation resulting from his claims of racial discrimination. The NEOC and EEOC

---

[1] For example, his grievances included complaints that he was required to wear work boots; required to work in his work area; required to unload packages; required to unload the heaviest trailers; required to work as directed, absent a doctor's note; forced to allow a supervisor to help him fix a jam; received a warning letter for his missorts; and he filed one grievance about a hate crime and a stolen jacket.

3

found no reasonable cause to believe discrimination occurred. In December 2002, plaintiff applied for disability benefits contending he could not work. Plaintiff alleged a disability onset date of December 18, 2002, on his application for benefits, and in an interview he stated he became unable to work on June 1, 2002. On April 8, 2004, the NEOC and EEOC determined that no probable cause existed to show discrimination against the plaintiff. On April 12, 2004, the Social Security Administration awarded plaintiff Social Security disability benefits. Plaintiff then filed this action in federal court. Thereafter, the court appointed a guardian ad litem to represent plaintiff, as his psychiatrist believed that the plaintiff's mental condition had deteriorated to the point where he could not assist with his case. Filing No. 27.

The evidence presented in support of this motion shows that plaintiff violated numerous rules throughout his employment with defendant. For example, plaintiff repeatedly received counseling and discipline regarding appropriate wearing apparel, attendance, and mistakes known as missorts. He required extra supervision and received progressive discipline for performance and attendance issues. Defendant terminated plaintiff on several occasions for performance issues, but then changed the termination to an unpaid suspension, usually after union intervention. From November 30, 2001, through the time of his departure, defendant documents nearly thirty episodes of counseling and discipline for these violations. During the last two years of employment, plaintiff missed more days than he worked. In 2001, plaintiff worked 97 out of 260 possible days, and in 2002 he worked 96 days and missed 162 days. On December 16, 2002, a meeting occurred with Pete Elroy, defendant's human resources manager, the union representatives, the plaintiff, and management to discuss plaintiff's grievances. According

to defendant, plaintiff was unable to articulate specific facts to support his grievances. On December 18, 2002, plaintiff gave defendant a note from his therapist which indicted he had counseling sessions on December 14 and 17, but he could return to work on December 18. Even though the note permitted plaintiff to work that day, December 18, plaintiff left work anyway.

Defendant terminated plaintiff for the three-day no-show no-call violation on December 24, 2002. Plaintiff's absences occurred during defendant's busiest time of year. Defendant has a collective bargaining agreement (CBA). The CBA provides a grievance process for employees. Generally, an employee will not lose pay or benefits under the CBA until the grievance procedure is completed. The CAB specifically has a provision that if an employee fails to report for work for three working days and does not notify the supervisor by the third day, the employee is terminated. CBA, Article 3(d), UPS 241-42, Filing No. 46.

**DISCUSSION**[2]

*Race Discrimination*[3]

The Supreme Court established a three-step framework for analyzing discrimination in the workplace. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under the burden-shifting

---

[2]Plaintiff asks the court to dismiss the motion for summary judgment, contending that defendant failed to fully comply with NeCivR 56.1. This rule requires, in relevant part, that the moving party set forth material facts in short numbered paragraphs. The court has carefully reviewed defendant's brief in support of summary judgment. The court notes that defendant's brief does in fact comply with the essence of Rule 56.1. The facts and law are carefully set forth and argued. The lack of headings and numbers, while a technical violation of the rules, is not so significant as to require dismissal of the motion in this case. In addition, counsel has apologized for failing to so number the paragraphs. Filing No. 52, page 2, fn. 1.

[3]Defendant first argues that all claims prior to June 2, 2002, are barred by the statute of limitations. The court need not decide that issue, however, since it concludes that plaintiff has no claim under any of his theories, as a matter of law, against the defendant.

framework, the plaintiff in the present case must establish: (1) that he is a member of a protected class, (2) that he was meeting the employer's legitimate job expectations, (3) that he suffered an adverse employment action, and (4) that similarly situated employees outside the protected class were treated differently.  *Tolen v. Ashcroft,* 377 F.3d 879, 882 (8th Cir. 2004).  The Eighth Circuit has stated that a plaintiff must establish a prima facie case of discrimination, which creates a presumption that the employer unlawfully discriminated against the employee.  *Id.*  The burden then shifts to the employer to show a nondiscriminatory reason for the adverse action and then back to the plaintiff to show that the articulated reason is merely a pretext for discrimination.  *Id.*

The court finds plaintiff is a member of a protected class and that he suffered an adverse employment action.  With regard to the second element, the court finds plaintiff was clearly not qualified for the job.  The overwhelming evidence of problems, discipline, absenteeism, and, by plaintiff's own admissions, mental health issues prohibited him from adequately performing his job.  The court finds as a matter of law he was not qualified for the job.  Plaintiff presents no credible evidence to support his claim.  He submits copies of phone conversations the EEOC investigators had with potential witnesses.  That is not admissible evidence as it is clearly hearsay.  *Mays v. H.G. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001).  He also produces copies of the written grievances he filed with the Union.  Again, and for the same reasons, this is not admissible evidence to show discrimination.  He cannot use the fact that he filed these grievances to prove the truth of his assertions regarding discrimination.  Plaintiff has failed to obtain deposition testimony or affidavits in this regard.  Further, defendant argues that plaintiff cannot meet the requirement that he is qualified to work, as he is receiving disability payments. Plaintiff filed for disability

benefits alleging he could no longer work. Plaintiff must reconcile these two positions, that he can work and that he cannot work because he is disabled. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 807 (1999) (cannot meet prima facie requirement that plaintiff if qualified for the position, if plaintiff also files for disability income on the basis she can't work); *Gilmore v. AT&T*, 319 F.3d 1042, 1047 (8th Cir. 2003).

With regard to the fourth element, the court finds that plaintiff has not presented sufficient evidence that other similarly situated employees were treated more favorably than he was treated. Thus, he has not met his prima facie case in this regard. *Jackson v. Rheem Mfg. Co.*, 94 Fed. Appx. 400, 401 (8th Cir.2004); *see Cherry v. Ritenour School District*, 361 F.3d 474, 479 (8th Cir. 2004) (employees must be similarly situated for comparison purposes). There is no showing by the plaintiff that he and others were supervised by the same supervisor, worked the same jobs, or were otherwise similarly situated. Plaintiff has produced no tangible evidence of any disparity in treatment as set forth herein. It is not enough for plaintiff to offer his opinion that others were treated differently. *Marquez v. Bridgestone/Firestone, Inc.*, 353 F.3d 1037, 1038 (8th Cir. 2004). Accordingly, the court determines that plaintiff has not established a prima facie case of race discrimination in this case.

However, even if the court determined that plaintiff established his prima facie case, the defendant has established that plaintiff's employment was terminated because he failed to report for work for three consecutive days, failed to timely notify his supervisor, and had numerous job performance issues. Defendant has articulated a nondiscriminatory reason for terminating plaintiff, namely, his work performance. Absent an illegal reason, the court is not to sit as a super-personnel department to oversee management decisions.

7

*See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995); *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136-37 (8th Cir. 1999).

The burden then shifts to the plaintiff to show that the reasons offered by the employer are merely a pretext for discrimination. Plaintiff offers no evidence in this regard. The policy is clear; there is no evidence plaintiff was discharged for any other reason. Accordingly, the court finds that the motion for summary judgment shall be granted as to plaintiff's claim of race discrimination.

*Hostile Work Environment/Harassment*[4]

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . race." 42 U.S.C. § 2000e-2(a)(1). "Discrimination based on [race or disability] which creates a hostile or abusive working environment violates Title VII." *McCown v. St. John's Health System, Inc.,* 349 F.3d 540, 542 (8th Cir. 2003). To state a prima facie case for a claim of racial discrimination or disability based on a hostile work environment, an employee must show: (1) he belongs to a protected group; (2) he was subject to unwelcome harassment: (3) the harassment was based on race or disability; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper remedial action. *Id.; Pedroza v. Cintas Corp. No. 2,* 397 F.3d 1063, 1068 (8th Cir. 2005). The Supreme Court has stated that "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment– an environment that a reasonable person

---

[4]The court has already concluded that there is no evidence of race discrimination in this case. However, because plaintiff has also argued that he was subjected to a hostile work environment/harassment on the basis of race, the court will address that claim for the record.

8

would find hostile or abusive–is beyond Title VII's purview." *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 81 (1998) (citation omitted). "Thus, the fourth part of a hostile environment claim includes both [an] objective and subjective component: an environment that a reasonable person would find hostile and one that the victim actually perceived as abusive." See *Duncan v. General Motors Corp.,* 300 F.3d 928, 934 (8th Cir. 2002). In determining whether or not the alleged harassment is severe and pervasive requires examining the totality of circumstances surrounding the discriminatory conduct. *Id.* Factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* However, courts are reminded that Title VII is "not designed to purge the workplace vulgarity." *Id.* (citation omitted).

The court finds that plaintiff has not stated a claim of hostile work environment/harassment, much less one for severe and persistent harassment. There is no showing of harassment that included discriminatory intimidation or ridicule or insult. Plaintiff testified that no one ever directed a racist comment to him. Filing No. 46, Mims Dep. 136 (UPS 218). He testified that one supervisor, Jesse Houseman, used a racial slur under his breath that was hard to hear. *Id.*, Mims Dep. 137 (UPS 218). He thought he overheard a couple of others, but he could not remember who or when they were made. *Id.*, Mims. Dep. 138-139 (UPS 219); *id.*, Mims Dep. 140-42 (UPS 219-220). One possible racial comment does not create an inference of hostile work environment. Plaintiff has failed to meet his burden of establishing a hostile work environment/harassment on the basis of race or disability.

9

However, as stated previously herein, even if the court did not make this determination, defendant has adequately shown that plaintiff's employment was terminated because he failed to report for work for three consecutive days, failed to timely notify his supervisor, and failed to offer any evidence that he was treated any differently than any other employee. Defendant has articulated a nondiscriminatory reason for terminating plaintiff, namely, his work performance.

The burden again shifts to the plaintiff to establish pretext. Plaintiff has failed to offer the court any evidence of pretext. Accordingly, the court finds the motion for summary judgment shall be granted as to this claim.

*Retaliatory Discharge*

Title VII provides that it shall be an unlawful employment practice for any employer to retaliate against an employee or an applicant for employment "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a) (1994). To establish a prima facie claim of retaliation, the plaintiff has to show that: (1) he filed a charge of harassment or engaged in other protected activity; (2) his employer subsequently took an adverse employment action against him; and (3) the adverse action was casually linked to his protected activity. *See Cross v. Cleaver,* 142 F.3d 1059, 1071-72 (8th Cir. 1998). If the plaintiff makes this showing, the employer must then rebut the presumption by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 1071-72. If the employer does this, the burden of production shifts back to the

plaintiff to demonstrate that the employer's nondiscriminatory reason is pretextual. *Id.* at 1072.

Plaintiff claims that defendant falsely stated that plaintiff had job performance problems, required him to work in his work area, wear boots, failed to provide training and then terminated his employment, all because plaintiff complained of racial discrimination. The court finds that plaintiff has not established a prima facie case of retaliation. It is true that plaintiff filed numerous grievances. However, there is no showing by the plaintiff that the grievances were rejected for racial reasons, or that the discharge was in any way related to the filing of these grievances. If anything, the numerous, vague grievances filed by the plaintiff were unreasonable. Plaintiff has admitted that he had difficulty with his work and with his co-workers. An employer under these circumstances must be free to adequately discipline its employees. Further, it is apparent from the record that on a number of occasions, the defendant reinstated plaintiff to his position, thus suspending rather than discharging him. The fact that the defendant participated in protected activity by filing the grievances does not insulate him from discipline for violating the rules. *Griffith v. City of Des Moines*, 387 F.3d 733, 738 (8th Cir. 2004). The court finds as a matter of law that plaintiff has failed to state a prima facie case of retaliation.

Even if the court did not make this determination, defendant has adequately shown that plaintiff's employment was terminated because he failed to report for work for three consecutive days, failed to timely notify his supervisor, and failed to offer any evidence that he was treated any differently than any other employee. Defendant has articulated a nondiscriminatory reason for terminating plaintiff, namely, his work performance.

The burden again shifts to the plaintiff to establish pretext. Plaintiff has failed to offer the court any evidence of pretext. Accordingly, the court finds the motion for summary judgment shall be granted as to this claim.

*ADA*

Plaintiff has filed a complaint under the Americans with Disabilities Act, 42 U.S.C. § 12112 (ADA). Defendant contends that plaintiff is unable to make out a prima facie case of discrimination under the ADA. The burden is on the plaintiff to show that (1) he was disabled within the meaning of the ADA; (2) that he was qualified to perform the essential functions of the job with or without reasonable accommodations; and (3) he suffered adverse employment action because of the alleged disability. *See Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998); *Webb v. Mercy Hosp.*, 102 F.3d 958, 959-60 (8th Cir. 1996). Summary judgment is proper if plaintiff fails to establish these claims. *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998). The burden then shifts to the defendant to articulate a legitimate reason for its decision to refuse to allow plaintiff to continue his position, and if the defendant is able to meet this burden, then the plaintiff must demonstrate that discrimination was the real reason for the employment decision. *Nesser*, 160 F.3d at 445.

There is no evidence in this case that the employer made the adverse employment action on the basis of the alleged disability. There is absolutely no evidence that the plaintiff told his employer that he was disabled. No evidence has been presented that there is any record of a disability. In that same regard, there is absolutely no evidence that the plaintiff ever asked for an accommodation for his disability. Plaintiff's misconduct was clearly the reason for his discharge, not his disability. There is a clear distinction, here,

between the alleged disability and the misconduct. Plaintiff never asked for part-time work or for any accommodations. Following termination, it was discovered that plaintiff suffered from depression, anxiety and paranoia. Both his treating doctor, Dr. Eugene Oliveto, plaintiff's therapist, Barbara Escamilla, and the consultative psychologist found plaintiff disabled and unable to work. He stated to the Social Security Administration that he left his position with the defendant because of his condition. Raddatz Aff. Ex. A, Filing No. 43 (UPS 017) (UPS 008, 011 testimony of girlfriend). The plaintiff has failed to offer any evidence to establish a prima facie case of discrimination on the basis of disability. *See also Kellogg v. Union Pac. R.R. Co.*, 233 F.3d 1083, 1086 (8th Cir. 2000) (summary judgment appropriate in ADA case where plaintiff fails to establish any element of her prima facie case). However, even if plaintiff did meet this burden, for the reasons already set forth in this opinion, the court finds defendant articulated a legitimate and nondiscriminatory reason for the discharge. The court further finds that plaintiff has failed to offer any evidence of pretext. Plaintiff has failed to establish that he "was a qualified individual with a disability" and consequently, summary judgment is appropriate. For all of these reasons, the court concludes that the discharge of the plaintiff was made for nondiscriminatory reasons.

### Breach of Contract/Discharge Claims

Plaintiff contends that the defendant breached a contract of employment, and as a consequence, he was wrongfully discharged. Defendant contends that these contract claims are preempted. Plaintiff describes this as a "simple contract action." Br. of plaintiff, Filing No. 48 at 35. It is very difficult to discern the basis for this claim from reading plaintiff's complaint and reviewing the brief in opposition to summary judgment. However,

the court has previously noted that the defendant has a collective bargaining agreement with its employees; that the CBA provides a grievance process for employees; that generally, an employee will not lose pay or benefits under the CBA until the grievance procedure is completed; and that the CAB specifically has a provision that if an employee fails to report for work for three working days and does not notify the supervisor by the third day, the employee is terminated. CBA, Article 3(d), UPS 241-42, Filing No. 46.

Generally, § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 *et seq.* preempts all contract claims over a state-law claim as it relates to a collective bargaining agreement. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210-211 (1985). This is the only contract that governs plaintiff's claims. In addition, plaintiff failed to allege that the union breached its duty of fair representation, and absent such a claim, plaintiff has no cause of action against the employer. *Waldren v. Boeing Co.*, 388 F.3d 591, 593-94 (8th Cir. 2004). These claims made by the plaintiff are preempted by the LMRA, Section 301, as plaintiff must bring an action for breach of duty of fair representation to prevail on a claim against an employer. 20 Richard A. Long, Williston on Contracts § 55.60, at 281 (4th ed. 2001); *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 564 (1990); *Warren v. Int'l Bd. of Teamsters*, 544 F.2d 334, 338 (8th Cir. 1976). The court concludes that summary judgment is appropriate on this claim.

The court finds that a jury could not find any evidence to support a verdict that defendant harassed, retaliated, or discriminated against the plaintiff in this case on the basis of race or disability, nor is there any legitimate claim in this court for breach of contract. Consequently, the court will grant defendant's motion for summary judgment in its entirety.

ACCORDINGLY, IT IS ORDERED that defendant's motion for summary judgment, Filing No. 44, is granted and the case is dismissed. A separate judgment will be entered in conjunction with this Memorandum and Order.

DATED this 12th day of March, 2007.

BY THE COURT:


s/ Joseph F. Bataillon
Chief Judge